**Slip Op. 08 – 41**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| ALLIED TUBE & CONDUIT CORP., IPSCO TUBULARS, INC., AND WHEATLAND TUBE COMPANY, | |
| Plaintiffs, | Before: Richard W. Goldberg, Senior Judge |
| v. | Court No.  06-00285 |
| UNITED STATES, | **PUBLIC VERSION** |
| Defendant, | |
| and | |
| TOSÇELIK PROFIL VE SAC ENDUSTRISI A.S., | |
| Defendant- Intervenor. | |

**OPINION**

[Commerce's remand determination is sustained.]

Dated: April 14, 2008

Schagrin Associates (Roger B. Schagrin, Brian E. McGill, and Michael James Brown) for Plaintiffs Allied Tube & Conduit Corp., IPSCO Tubulars, Inc., and Wheatland Tube Company.

Jeffrey S. Bucholtz, Acting Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Maame A.F. Ewusi-Mensah and David S. Silverbrand); Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (Jennifer I. Johnson and Sapna Sharma), Of Counsel, for Defendant United States.

Law Offices of David L. Simon (David L. Simon) for Defendant-Intervenor Tosçelik Profil ve Sac Endustrisi A.S.

GOLDBERG, Senior Judge:  This case is before the Court following remand to the U.S. Department of Commerce ("Commerce").  In Allied Tube & Conduit Corp. v. United States, 31 CIT __, Slip Op. 07-107 (July 9, 2007), familiarity with which is presumed, the Court remanded Commerce's determination that Tosçelik Profil ve Sac Endustrisi A.S. ("Tosçelik")'s single U.S. sale was a bona fide transaction.  The Court ordered Commerce to explain the reasoning behind the methodology it used to determine commercial reasonableness.  The domestic parties, Allied Tube & Conduit Corp., IPSCO Tubulars, Inc., and Wheatland Tube Company (collectively "Allied Tube") urge the Court to again remand the matter with instructions to rescind Tosçelik's new shipper review.  For the reasons that follow, Commerce's remand determination is sustained in its entirety.

## I.  STANDARD OF REVIEW

A court shall hold unlawful Commerce's final determination in an antidumping administrative review if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with the law . . . ."  19 U.S.C. § 1516a(b)(1)(B)(i) (2000).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Nippon Steel Corp. v. United States, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB,

305 U.S. 197, 229 (1938).  "Even if it is possible to draw two
inconsistent conclusions from evidence in the record, such a
possibility does not prevent Commerce's determination from being
supported by substantial evidence."  Am. Silicon Techs. v.
United States, 261 F.3d 1371, 1376 (Fed. Cir. 2001).

## II.  DISCUSSION

### A. Commercial Reasonableness of the Price of Tosçelik's Sale

In its first new shipper review determination,[1] Commerce
employed a "range" methodology to assess the commercial
reasonableness of the price of Tosçelik's sale.  See Allied
Tube, 31 CIT at __, Slip Op. 07-107 at *8.  The "range"
methodology is based on Customs and Border Patrol data of all
imports of certain welded carbon steel pipe and tube from Turkey
that fell within the scope of the antidumping duty order during
the relevant period of review ("CBP data").  Commerce ranked the
data by the weighted average unit values ("AUVs") of each
manufacturer's total imports.  Because the AUV of Tosçelik's

_____

[1] As discussed at length in Allied Tube, if a producer or
exporter did not export merchandise that was the subject of an
antidumping duty order during a previous investigation period,
it may request a new shipper review.  A new shipper review can
be based on a single U.S. sale, as long as Commerce finds that
the sale was a bona fide transaction.  A sale is bona fide when
it is "commercially reasonable."  Commerce looks at the totality
of the circumstances to determine whether a sale is
"commercially reasonable."  See generally Allied Tube, 31 CIT at
__, Slip Op. 07-107 at *3-6.

single U.S. sale fell within this range of AUVs by manufacturer,[2] Commerce determined that the price of the sale was commercially reasonable.

Commerce has the discretion to choose whatever methodology it deems appropriate, as long as it is reasonable and its conclusions are supported by substantial evidence. See Fed.-Mogul Corp. v. United States, 18 CIT 785, 807-08, 862 F. Supp. 384, 405 (1994). In the present matter, the Court remanded and ordered Commerce to explain, if it is able, why its "range" methodology is a reasonable approach. Specifically, the Court stated:

> [T]he "range" methodology can only be deemed reasonable if Commerce can explain why the allegedly distortive entries, some over [ ] the AUV for the industry, should be included in the range of reasonableness. When Commerce's commercial reasonableness determination hinges on comparing the new shipper sale price to a range of values, it is crucial to make sure the values at both ends of that range are commercially reasonable.

Allied Tube, 31 CIT at __, Slip Op. 07-107 at *12. Commerce complied with the Court's order and issued a remand determination. See Remand Determination Pursuant to Court Remand in Allied Tube & Conduit Corp. v. United States, Court No. 06-00285 (Dep't Commerce Oct. 19, 2007) ("Remand

---

[2] The AUV of Tosçelik's sale ranked [ ] lowest out of [ ] manufacturers.

Determination"). Commerce explains that the "range" methodology is reasonable because it best reflects the variation of the types of merchandise included in the scope of the order. For example, [ ], which has the lowest AUV in the range, might manufacture only a high volume, low value-added mix of products. On the other hand, [ ], which has the highest AUV, might manufacture only low-volume, high value-added products. Despite this variation, the products manufactured by both companies fall within the scope of the order, and may be reflective of the market conditions at the time of the sale. Even though these two values are considerably different, Commerce believes it is reasonable to include them both in a comprehensive analysis of Tosçelik's sale.

The Court in Allied Tube was concerned that the small-quantity, high-value sales included in the "range" analysis might reflect different types of merchandise than the standard pipe imported by Tosçelik.[3] If they are indeed different products, it would be unreasonable to compare those figures to Tosçelik's sale. Commerce admits that there is some product variation in the CBP dataset because it is based on the scope of the antidumping duty order, which includes multiple Harmonized

---

[3] The manufacturers with high-value sales that concern Allied Tube are those imported by [ ]. See Allied Tube, 31 CIT at __, Slip Op. 07-107 at *9 n.5. The AUVs of these manufacturers (not including Tosçelik) range from [ ] to [ ] per MT.

Tariff Schedule ("HTS") numbers.  Commerce believes it would be arbitrary to exclude the small-quantity, high value entries that Allied Tube challenges as "aberrational," because it is possible that those sales may, in fact, be the *same* type of merchandise imported by Tosçelik.

Commerce is correct to conclude that it would be arbitrary to simply disregard the manufacturers with high AUVs and conclude that Tosçelik's sale price was not commercially reasonable.  It would be equally arbitrary to assume that the high AUV sales, some over [ ] the overall AUV of the CBP data, are commercially reasonable, without further investigation.  In light of the requirement that Commerce must carefully scrutinize new shipper reviews that are based on single sales, Tianjin Tiancheng Pharmaceutical Co. v. United States, 29 CIT __, __, 366 F. Supp. 2d 1246, 1263 (2005), Commerce should take the additional step of ensuring that it is reasonable to include the disputed high-AUV data in the range.

At the Court's suggestion, Commerce disaggregated the CBP data for the manufacturers to which Allied Tube had no objection.[4]  Additionally, Commerce looked at only the data for the HTS category that encompasses Tosçelik's sale.  Commerce

---

[4] Commerce limited the disaggregated data analysis to the subset of manufacturers comprising [ ] percent of entries by volume. These manufacturers are: [ ].  See Remand Determination at 21.

found that the AUV of Tosçelik's sale fell well within the range

of disaggregated entry values.[5]  See Remand Determination at 22.

Because Commerce does not have access to shipment-specific

data,[6] it is uncertain what different types of merchandise are

being compared in the disaggregated data analysis.  However, the

disaggregated data analysis undercuts Allied Tube's assertion

that the AUVs of certain manufacturers should be summarily

excluded as "aberrational."  The manufacturers which Allied Tube

implicitly accepts as non-aberrant have small-quantity entries

that are well above the AUV of Tosçelik's sale.  See Remand

Determination at 21-22.  In response to Commerce's comprehensive

Remand Determination, Allied Tube relies on the same argument it

made in Allied Tube: that the AUV of Tosçelik's single sale was

higher than the AUVs of all but [ ] percent of all entries by

quantity during the period of review.  While this may be true,

it does not mean that high-priced, low quantity sales are not

bona fide.  Single sales should be "carefully scrutinized," but

---

[5] The disaggregated entry values range from [ ] to [ ] per MT.
Tosçelik's sale has an AUV of [ ] per MT.  See Remand
Determination at 22.

[6] Commerce notes that during the course of a new shipper review,
"it is not within the Department's practice to attempt to obtain
the detailed invoices and specific product codes for each and
every sale that is reported by CBP for the POR, given the
proprietary restrictions of such data."  Remand Determination at
10.  The Court agrees that in the present case, it would be
overly burdensome and unnecessary to require Commerce to obtain
detailed invoices and shipment-specific data.

they are not inherently commercially unreasonable.  <u>Tianjin</u>

<u>Tiancheng Pharm. Co.</u>, 29 CIT at __, 366 F. Supp. 2d at 1263.

Additionally, Allied Tube completely ignores Commerce's

disaggregation analysis.  Allied Tube fails to point to any

evidence, aside from unsupported assertions, that detracts from

Commerce's conclusion.

In its <u>Remand Determination</u>, Commerce has sufficiently

scrutinized the price of Tosçelik's single U.S. sale, and the

agency's conclusion that the price is commercially reasonable is

supported by substantial evidence.[7]

---

[7] In the <u>Remand Determination</u>, Commerce took issue with the
Court's analysis of the "ordinary course of trade" requirement
discussed in <u>Corus Staal BV v. United States</u>, 27 CIT 388, 404–
05, 259 F. Supp. 2d 1253, 1268 (2003).  <u>See</u> <u>Allied Tube</u>, 31 CIT
at __, Slip Op. 07-107 at *11-13.  The Court does not intend to
suggest that the "commercial reasonableness" test for new
shipper reviews involves exactly the same analysis as the
"ordinary course of trade" concept defined in 19 U.S.C. §
1677(15).  However, "[w]hen Commerce's commercial reasonableness
determination hinges on comparing the new shipper sale price to
a range of values, it is crucial to make sure the values at both
ends of that range are commercially reasonable."  <u>Id.</u> at __,
Slip Op. 07-107 at *12; <u>see</u> <u>Hebei New Donghua Amino Acid Co. v.
United States</u>, 29 CIT __, __, 374 F. Supp. 2d 1333, 1338 (2005)
(holding that "[i]n accordance with the goal of ensuring a
realistic U.S. price figure, it is reasonable that Commerce uses
the bona fide sale test to exclude sales that are 'not typical
of normal commercial transactions in the industry.'" (quoting
<u>Tianjin Tiancheng Pharm. Co.</u>, 29 CIT at __, 366 F. Supp. 2d at
1249-50). Following this principle, Commerce has adequately
demonstrated that its range methodology, supported by the
disaggregated data analysis, is reasonable.

B. Shipping Costs

In Allied Tube, the Court was concerned with the reasonableness of the high shipping costs associated with Tosçelik's sale. Specifically, as understood from Commerce's original new shipper review determination, Tosçelik's shipment was made by container instead of full vessel load, which contributed to the higher freight charge. Commerce had not adequately explained why it was commercially reasonable for Tosçelik to make the shipment by container. On remand, Commerce explains that a U.S. customer is unlikely to order a full vessel load from a new shipper that does not have a "proven track record for producing to ASTM standards for the U.S. market or have a history of performance and quality in the U.S. market." Remand Determination at 26. Furthermore, a container is a reasonable and appropriate means for transporting a quantity the size of Tosçelik's sale. Tosçelik pre-sold the shipment to an unaffiliated U.S. customer who wished to test its suitability for the marketplace, even with the higher expense of containerized shipping. Id. at 25-26. All of these factors support Commerce's conclusion that the shipping costs were commercially reasonable.[8]

_____

[8] In Allied Tube I, the Court was concerned that the timing of

(footnote continued)

Allied Tube does not directly address the shipping cost issue, other than pointing out that the shipping costs were high.  Instead, Allied Tube focuses on the small quantity of the sale.  If the sale were a reasonable (i.e., larger) quantity, Allied Tube argues, the higher-cost containerized shipment would not have been necessary.  In Allied Tube, the Court already determined that substantial evidence supports Commerce's conclusion that the quantity of Tosçelik's sale is commercially reasonable.[9]  Allied Tube fails to call into question the reasonableness of the shipping cost.

**C. Commerce's Ultimate Determination That Tosçelik's Single U.S. Sale Was a Bona Fide Transaction is Supported by Substantial Evidence**

The Court must consider together all of Commerce's findings to ultimately determine whether there is substantial evidence to support its decision that under the totality of the

---

Tosçelik's U.S. entry indicated that it may be commercially unreasonable.  Commerce explains that the timing of the sale is irrelevant because given the "lack of predictability in the exact timing of when a waterborne shipment would enter the United States, it is unreasonable to assume that Tosçelik was specifically attempting to time the entry at a date so close to the end of the POR."  Remand Determination at 28.  The Court agrees.

[9] In its original determination, Commerce compared Tosçelik's sale to the size of Tosçelik's sales in its home market.  "The fact that Tosçelik's single U.S. sale is of a larger quantity than a majority of its home market sales is adequate to support the conclusion that the quantity is commercially reasonable."  Allied Tube I, 31 CIT at __, Slip Op. 07-107 at *18.

circumstances, Tosçelik's single U.S. sale is a bona fide transaction.  See <u>Tianjin</u>, 29 CIT at __, 366 F. Supp. 2d at 1249-50.  As discussed above, the price of Tosçelik's U.S. sale and the associated shipping costs were commercially reasonable. There is also substantial evidence to support Commerce's conclusion that the quantity of the sale was reasonable, and that Tosçelik followed normal business practices in executing the sale.  See <u>Allied Tube</u>, 31 CIT at __, Slip Op. 07-107 at *18, 22-23.  Viewed under the totality of the circumstances, there is substantial evidence to support Commerce's conclusion that Tosçelik's sale was bona fide.

## III. <u>CONCLUSION</u>

In light of the foregoing, Commerce's remand determination is sustained in its entirety.  A separate judgment will be entered accordingly.

/s/ Richard W. Goldberg
**Richard W. Goldberg**
**Senior Judge**

**Date:       April 14, 2008**
**            New York, New York**